**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0523n.06

**No. 19-3471**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 09, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| ADAM DARIUS WILSON, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

BEFORE:     BOGGS, CLAY, and GIBBONS, Circuit Judges.

BOGGS, Circuit Judge.  When Andrew Wilson filed the latest appeal of his sentence in 2019, this time under the First Step Act of 2018, he had been continuously incarcerated for eighteen years.  After seven years in state prison, he is now serving a sentence of nearly twenty-two years following his guilty plea to possession with intent to distribute controlled substances and being a felon in possession of a firearm.  He appeals from the district court's order partly denying relief under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (Dec. 21, 2018) and alleges that the court abused its discretion by reducing his term of supervised release but not his sentence.  He raises the following issues: (1) his sentencing had been subject to the mandatory Sentencing Guidelines pre-*Booker*; (2) he had been incorrectly classified as a career offender at sentencing; and (3) the district court failed to consider his rehabilitation efforts.  We reverse the district court's order denying Wilson's petition for relief, and remand for resentencing.

**I. BACKGROUND**

On May 11, 2001, Andrew Wilson pled guilty to the following charges: Count 1, possession with intent to distribute 174.18 grams of cocaine base ("crack" cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Count 2, possession with intent to distribute 499.44 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and Count 3, being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Under the 2000 edition of the Sentencing Guidelines, Wilson's base offense level was 34, based on the amount of crack and cocaine. He received a two-level enhancement for possession of a firearm. Wilson had nine criminal-history points, but his two prior felony convictions resulted in his designation as a career offender under USSG §4B1.1, increasing his offense level to 37 and criminal-history category to VI. He received a three-level reduction for acceptance of responsibility under USSG §§ 3E1.1(a) and (b).

After application of enhancements and reductions, Wilson's offense level was 34. According to his Presentence Investigation Report, his statutory sentencing range under 21 U.S.C. § 841 was twenty years to life, while his Guidelines range was 262–327 months. Without application of a career-offender enhancement, his offense level would have been 33 with criminal-history category IV, which would have resulted in a markedly lower Guidelines range of 188–235 months. On August 27, 2001, the district court sentenced him to the low end of the Guidelines range: 262 months, and to ten years of supervised release.

Wilson began serving his federal sentence in 2008, after seven years in state prison. On June 7, 2010, Wilson filed a pro se motion in federal district court to correct a clerical error in a judgment, alleging that the sentencing district court had erred by not requiring his federal sentence to run concurrently with his state sentence. That motion was denied.

On September 4, 2018, Wilson filed another pro se motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). Wilson argued that under Amendment 782 (adopted Nov. 1, 2014) to USSG § 1B1.10, which lowered the base offense level in the drug-quantity tables in USSG § 2D1.1, his sentence should be reduced by applying offense level 32. He also argued that under Amendment 788 (adopted Nov. 1, 2014), the new lower Guidelines may be applied retroactively. The district court held that Amendment 782 was inapplicable to Wilson, because it reduced the base offense level but not his ultimate offense level, which was determined by his career-offender status. Thus, Wilson's Guidelines range remained unchanged.

In denying Wilson's motion, the district court cited *United States v. Purdue*, 572 F.3d 288, 293 (6th Cir. 2009) to support a statement that "[i]t is clear precedent in the Sixth Circuit that Wilson's classification as a career offender renders him ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the retroactive amendments to the [Sentencing Guidelines] regarding crack cocaine." However, this court has since held that "[t]he text of the First Step Act contains no freestanding exception for career offenders," and "[a defendant] is eligible for resentencing because, and only because, the Fair Sentencing Act modified the statutory range for his offense. That the Sentencing Guidelines also would have applied differently does not affect his eligibility for resentencing." *United States v. Beamus*, 943 F.3d 789, 791–92 (6th Cir. 2019).

On March 7, 2019, Wilson filed a motion to reduce his sentence under Section 404 of the First Step Act, claiming that his statutory minimum term was reduced by the First Step Act from twenty years to ten years and requesting a resentencing hearing to consider the sentencing factors under 18 U.S.C. § 3553(a). The district court agreed that, under the First Step Act, his mandatory minimum sentence would have been reduced from twenty to ten years, the maximum sentence would have remained as life imprisonment, and the term of supervised release would have been

reduced from ten to eight years. The district court also determined, however, that Wilson's sentence was based on the Guideline range corresponding to his total offense level and criminal-history category and was unaffected by the statutory minimum. In a three-page opinion, the district court mentioned, without elaborating, its justifications for the sentence "by a variety of considerations previously set forth in the plea agreement and discussed at Mr. Wilson's original sentencing, including the nature of the crime, his prior convictions, the need to protect the public, and the amount of drugs involved in this case," as well as the statutory maximum, and concluded that no reduction in sentence was warranted. However, the district court reduced the duration of Wilson's supervised release from ten to eight years under 21 U.S.C. § 841(b)(1)(B) as amended by Section 2 of the Fair Sentencing Act and made retroactive by the First Step Act.

Wilson appealed timely, alleging that the district court abused its discretion by not considering that Wilson (1) had been sentenced under mandatory Guidelines; (2) had been incorrectly classified as a career offender at the time of his original sentencing; and (3) had shown post-sentencing rehabilitation.

## II. ANALYSIS

### A. Jurisdiction

Although neither party challenges this court's jurisdiction, we have an independent duty to ensure that we may review Wilson's appeal. The general appellate-jurisdiction statute, 28 U.S.C. § 1291, gives circuit courts jurisdiction over "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. But 18 U.S.C. § 3742(a) permits the defendant to file a notice of appeal of a final sentence in only four circumstances:

> A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
> (1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a). We have previously held that the limitations imposed by § 3742(a) apply not only to regular appeals of a sentence but also to some post-judgment requests to modify a sentence, including those made under Federal Rule of Criminal Procedure 35(f) and those made following changes to the Sentencing Guidelines that are reviewed on appeal under 18 U.S.C. 3582(c)(2). *See United States v. Smithers*, 960 F.3d 339, 343 (6th Cir. 2020); *United States v. Bowers*, 615 F.3d 715, 720–22 (6th Cir. 2010); *United States v. Moran*, 325 F.3d 790, 792–93 (6th Cir. 2003). In other words, "a district court 'impose[s] a new sentence' even when it engages in a limited modification or reduction of an existing sentence—not just when it conducts a plenary resentencing." *United States v. Foreman*, 958 F.3d 506, 511 (6th Cir. 2020) (quoting *Bowers*, 615 F.3d at 719). But under *Bowers*, "sentence reductions under § 3582(c)(2) and Rule 35(b) cannot be reviewed for reasonableness under § 3742(a)(1)." *Foreman*, 958 F.3d at 513.

While our precedent does not fully address the impact of § 3742(a) restrictions on First Step Act appeals, after the parties completed briefing in this case, we held that § 3742(a) establishes a non-jurisdictional limit on appellate review and not an exception to general appellate jurisdiction under § 1291. *United States v. Marshall*, 954 F.3d 823, 829 (6th Cir. 2020); *see also Foreman*, 958 F.3d at 513. That is, § 3742(a) is a "'mandatory claim-processing rule or a mandatory limit on our authority to grant a certain form of relief." *Marshall*, 954 F.3d at 826 (quoting *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019)). Such rules "still constrain a

court's authority, but they are waivable and forfeitable limits on that authority. They are meant to 'promote the orderly progress of litigation,' not to eliminate or expand 'the classes of cases a court may entertain.'" *Ibid.* (quoting *Fort Bend*, 139 S. Ct. at 1848–49). Additionally, we do not have an obligation to raise mandatory claim-processing rules on our own. *Ibid.*

This court arrived at the classification of § 3742(a) as a non-jurisdictional limit on appellate review following repeated warnings from the Supreme Court, most recently formulated as a "clear-statement rule," *ibid.*:

> While not demanding that Congress "incant magic words" to render a prescription jurisdictional, *Auburn*, 568 U.S. at 153, 133 S.Ct. 817, the Court has clarified that it would "leave the ball in Congress' court": "If the Legislature clearly states that a [prescription] count[s] as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue[;] [b]ut when Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 515–516, 126 S.Ct. 1235 (footnote and citation omitted).

*Fort Bend*, 139 S. Ct. at 1850.

Furthermore, "[w]e recently held that § 3742(a)(1)—which permits review of a sentence 'imposed in violation of law'—allows us to review for reasonableness a new sentence that the district court imposes after it *grants* a reduction under the First Step Act." *Smithers*, 960 F.3d at 343 (emphasis in original) (discussing *Foreman*, 958 F.3d at 512–15).

Although Wilson did not obtain from the district court all the relief he sought, his sentence was reduced insofar as his term of supervised release was shortened to eight years.

Therefore, this court has jurisdiction over Wilson's appeal of his sentence pursuant to 28 U.S.C. § 1291 and may grant relief under 18 U.S.C. § 3742(a).

**B. Standard of Review**

We review for reasonableness a new sentence that the district court imposes after its grant of a First Step Act motion to reduce sentence. *Foreman*, 958 F.3d at 515. But when a statute

permits, yet does not require, the district court to reduce a sentence, as a general rule its decision whether a sentence reduction is warranted is reviewed for abuse of discretion. *United States v. Metcalfe*, 581 F.3d 456, 458 (6th Cir. 2009); *United States v. Watkins*, 625 F.3d 277, 280 (6th Cir. 2010). We have applied this rule to review of a denial of a motion to reduce sentence under the First Step Act and § 3582(c). *See United States v. Marty Smith*, 959 F.3d 701, 702 (6th Cir. 2020) (order) (per curiam); *United States v. Woods*, 949 F.3d 934, 937–38 (6th Cir. 2020); *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009); *United States v. Williams*, --- F. App'x ---, 2020 WL 3124227, at *2 (6th Cir. June 12, 2020).[1]

At least one earlier unpublished opinion adapted an interpretation of *Marshall*'s pronouncement that "it makes no sense to say declining to modify a sentence 'imposes' a sentence," *Marshall*, 954 F.3d at 830, stating that:

> [Section] 3742(a)(1) does not authorize us to order [relief under the First Step Act here]; no sentence was "imposed" upon [the defendant] as a result of the district court's denial of his motion. . . . Therefore, [the defendant's] appeal does not fit within the narrow class of sentencing appeals for which we may order relief. This conclusion renders [his] appeal non-justiciable and precludes further review of his arguments.

*United States v. Hunnicutt*, 807 F. App'x 551, 553 (6th Cir. 2020). But our binding precedent now tips the scale towards the interpretation that denials of motions to reduce sentence under the First Step Act be reviewed for abuse of discretion. *See Marty Smith*, 959 F.3d at 702; *Woods*, 949 F.3d at 937–38; *Moore*, 582 F.3d at 644; *see also Hunnicutt*, 807 F. App'x at 553 (Larsen, J.,

---

[1] The interaction between the First Step Act and our decisions in *Marshall* and *Bowers* can lead, however, to incongruous results: While we can review modification of a sentence pursuant to the First Step Act using § 3742(a) factors and applying a reasonableness standard, a denial of sentence reduction can only be reviewed for abuse of discretion and "Section 3742(a) . . . does not provide the basis or the criteria for reviewing the denial of [a defendant's] request for a lower sentence." *United States v. Richardson*, 960 F.3d 761, 764 (6th Cir. 2020); *see also Foreman*, 958 F.3d at 515 (holding that "an allegation of unreasonableness in a First Step Act proceeding constitutes a cognizable 'violation of law' that is reviewable under § 3742(a)(1)"). From a policy point of view, then, district courts may have an incentive, as a matter of discretion, to leave sentences undisturbed rather than to reduce them even minimally, as is the case here, and thus expose their decisions to a more expansive review by courts of appeals, which may result in more reversals and remands. We leave addressing this conundrum for a more suitable case.

concurring) (explaining that, under *Marshall*, 954 F.3d at 829, "§ 3742 is not jurisdictional; instead 28 U.S.C. § 1291 grants us jurisdiction over this appeal," and because the defendant in *Hunnicut* is not entitled to relief on the merits, "I would therefore not reach the question addressed in part II.B. of the majority opinion" addressing justiciability).

We review *de novo* the legal question of whether a conviction is a qualifying offense for a career-offender sentencing enhancement. *United States v. Wiseman*, 932 F.3d 411, 420 (6th Cir. 2019).

## C. First Step Act

A district court may modify a defendant's sentence only as authorized by statute. *United States v. Watkins*, 625 F.3d 277, 280 (6th Cir. 2010).

The First Step Act of 2018 permits a court that had sentenced a defendant for an offense for which "the statutory penalties . . . were modified by section 2 or 3 of the Fair Sentencing Act of 2010" to "impose a reduced sentence as if" the Fair Sentencing Act had been "in effect at the time the covered offense was committed." First Step Act of 2018, § 404(a), (b), Pub. L. No. 115-391, 132 Stat. 5194, 5222. Sections 2 and 3 of the Fair Sentencing Act modified the statutory penalties for offenses involving crack cocaine. Fair Sentencing Act of 2010, Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372. However, "[t]he First Step Act imposes two limits on eligibility. Defendants may not seek a reduction if their sentence was already modified to comport with the Fair Sentencing Act. And defendants may not seek resentencing under the First Step Act if they lost a prior motion after a 'complete review of the motion on the merits.'" *Beamus*, 943 F.3d at 791 (quoting First Step Act of 2018, § 404(c)). Neither of these restrictions applies here.

Section 2 of the Fair Sentencing Act increased the threshold for the amount of crack cocaine required to invoke the penalties of 21 U.S.C. 841(b)(1)(A)(iii) from 50 grams to 280

grams. Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. Wilson pled guilty to possession with intent to distribute 174.18 grams of crack cocaine, placing him in § 841(b)(1)(B)(iii)'s range of "28 grams or more" of crack cocaine after the application of the Fair Sentencing Act of 2010. In 2010, after this amendment, Section 841(b)(1)(B)(iii) carried mandatory sentencing ranges of five to forty years without a prior drug felony conviction, and ten years to life with such a prior conviction. 21 U.S.C. § 841(b)(1)(B). The minimum term of supervised release after the amendment was eight years with such a prior conviction. *Ibid.*

The parties agreed that Wilson's sentence qualified for a reduction under the First Step Act. However, "[t]hat [a defendant] is eligible for resentencing does not mean he is entitled to it. The First Step Act ultimately leaves the choice whether to resentence to the district court's sound discretion." *Beamus*, 943 F.3d at 792. And the district court concluded that, since Wilson's Guidelines range did not change under the First Step Act, because he was sentenced as a career offender, a reduction in his custodial sentence was not warranted. The district court, however, reduced Wilson's term of supervised release from ten to eight years.

Wilson responds with three challenges: first, that he was sentenced under mandatory Guidelines; second, that he had been incorrectly classified as a career offender at the time of his original sentencing; and third, that the district court abused its discretion by failing to consider Wilson's post-sentencing rehabilitation. We address these points in turn.

### 1. Pre-*Booker* sentencing

The First Step Act does not provide for plenary resentencing, only for a reduction of sentence under specific circumstances. *See Foreman*, 958 F.3d at 510; *United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019) (order) (per curiam) ("The First Step Act's limited, discretionary authorization to impose a reduced sentence is inconsistent with a plenary resentencing.").

Furthermore, "[w]e have held [in *Alexander*] that a sentence reduction under the First Step Act is a § 3582(c) modification" of a sentence. *United States v. Lakento Smith*, 958 F.3d 494, 498 (6th Cir. 2020). "[B]ased on the text and structure of the Fair Sentencing Act, the district court does not need to conduct a full resentencing." *Id.* at 499.

But, "when determining whether to reduce a defendant's sentence under § 404" of the First Step Act, "courts may consider all relevant factors." *United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020). "The First Step Act does not prohibit courts from considering the factors outlined in § 3553(a), which include the applicable sentencing guidelines range and other relevant information about the defendant's history and conduct." *Ibid*.

When explaining its decision to deny a reduction of sentence of imprisonment in the context of the First Step Act, which included justifying the sentence by factors set forth in the plea agreement and discussed at the sentencing hearing, the district court in our case did not consider that the discretion of the original sentencing court had been constrained by the lower end of the Guidelines. The sentencing court addressed the minimum sentence set by the Guidelines and fixed Wilson's sentence at the low end of the Guidelines at 262 months. The sentencing court stated,

> Normally the [c]ourt would say that because there aren't any obvious mitigating factors, that some sentence in the mid[-]range of the guidelines would be most appropriate. However, these career offender provisions do and are intended to place the defendant at a very high custody range. And what the [c]ourt needs to do is determine whether the range contemplated—or whether the range contemplated is a sentence which is sufficient to address the offense conduct and to protect society from further similar activity. In this case it appears that even the low end of the guidelines range is sufficient to do that.

Regarding Wilson's supervised release, the sentencing court said: "Upon release from the custody of the Bureau of Prisons, the defendant shall be placed on supervised release for a term of 10 years, which is the [statutory] mandatory minimum term applicable for these offenses."

Without the mandatory aspect of the Guidelines, the sentencing court might have set a lower sentence to begin with. At the sentencing hearing, the court questioned whether Wilson was actually subject to the twenty-year statutory mandatory minimum based on developing caselaw in this circuit. However, the sentencing court decided that it did not need to address this question, because the bottom of the then-mandatory Guidelines range was higher than the statutory minimum at the time.

This court "recently held [in *Foreman*, 958 F.3d at 512–15] that § 3742(a)(1)—which permits review of a sentence 'imposed in violation of law'—allows us to review for reasonableness a new sentence that the district court imposes after it *grants* a reduction under the First Step Act." *Smithers*, 960 F.3d at 343. That is because "a district court 'impose[s] a new sentence' even when it engages in a limited modification or reduction of an existing sentence . . . ." *Foreman*, 958 F.3d at 511 (quoting *Bowers*, 615 F.3d at 719). Here, the district court partly denied Wilson's motion to reduce sentence under the First Step Act, but it granted relief by reducing the term of supervised relief to eight years. It therefore "engage[d] in a limited modification or reduction of an existing sentence," exposing its ruling to appellate review as an "imposition" of a sentence. *See Foreman*, 958 F.3d at 511; *Smithers*, 960 F.3d at 343.

"Under normal circumstances, a district court judge who treats the Guidelines as mandatory in imposing a sentence in this post-*Booker* world necessarily commits plain error." *United States v. Magouirk*, 468 F.3d 943, 947 (6th Cir. 2006). *See also Peugh v. United States*, 569 U.S. 530, 537 (2013) ("Failure to calculate the correct Guidelines range constitutes procedural error, as does treating the Guidelines as mandatory."). The error need not be obvious at the time of sentencing to be considered plain. *United States v. Oliver*, 397 F.3d 369, 379 (6th Cir. 2005)

Our authority to remedy a "plain error" is discretionary. *United States v. Olano*, 507 U.S. 725, 735 (1993). Under Fed. R. Crim. P. 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Review for plain error "requires [a defendant] to show (1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (alteration in original) (citing *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). "Only in exceptional circumstances will we find such error—only, we have said, where the error is so plain that the trial judge was derelict in countenancing it." *Ibid.* (cleaned up).

Here, the sentencing court admitted being bound by the mandatory Guidelines and imposed a sentence at the low end of the mandatory range. By implication, if not bound by the Guideline's minimums of sentencing and supervised release, the sentencing court could have imposed a sentence below the Guidelines range. *See United States v. Flowers,* 963 F.3d 492, 499 (6th Cir. 2020) ("If, when a court originally imposed a sentence, it specifically relied on a mandatory minimum that was later amended by the Fair Sentencing Act, that fact would be a strong reason to grant resentencing under the First Step Act, since it in turn suggests that the sentencing court might have imposed a lower sentence were it not for that mandatory minimum.")

The district court considering Wilson's motion for sentence reduction under the First Step Act did not address the fact that Wilson was sentenced under mandatory Guidelines. It simply concluded that a reduction of his sentence was not warranted. But by not addressing the issue of pre-*Booker* sentencing, the district court effectively re-imposed a sentence under the mandatory Guidelines. However, this court has unequivocally held that "a district court judge who treats the

Guidelines as mandatory in imposing a sentence in this post-*Booker* world necessarily commits plain error." *Magouirk*, 468 F.3d at 947.

We therefore hold that the district court committed plain error in re-sentencing Wilson under the First Step Act to the same term of imprisonment and by not addressing the mandatory aspect of his original sentence under the Guidelines. We remand for resentencing in accordance with this opinion.

### 2. Career-Offender Status

Wilson alleges that the district court abused its discretion by declining to consider Wilson's challenge to his classification as a career offender. He alleges that, because his 1992 felony drug-trafficking conviction did not receive criminal-history points under USSG § 4A1.1 (2000), it was not a qualifying predicate for designation as a career offender for purposes of USSG § 4B1.1 (2000). Without designation as a career offender, Wilson's Guidelines range at sentencing would have been 188 to 235 months, corresponding to an offense level of 33 and criminal-history category IV. In effect, Wilson alleges that the sentencing court did not apply the correct Guidelines range. He therefore argues that the district court abused its discretion by refusing to consider Wilson's "correct [G]uidelines range."

Section 4B1.1 (2000) defines a career offender as follows:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1 (2000).

In turn, Section 4B1.2(c) defines "two prior felony convictions" to mean:

(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence,

13

two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c).

USSG § 4B1.2(c) (2000).

Wilson was thirty years old at the time he committed the offenses for which he was convicted in the instant case. His felony conviction was for possession with intent to distribute cocaine and cocaine base, both controlled substances. According to his Presentence Investigation Report, Wilson had two prior drug-trafficking convictions: one on September 30, 1991, for which he received two criminal-history points, and another on August 19, 1992, for which he had received a sentence running concurrently with a conviction for possession of criminal tools and in connection with which he had a parole violation pending at the time the Presentence Report was compiled. In scoring Wilson's listed convictions, his 1992 sentence for possession of criminal tools received three criminal-history points, and his related drug-trafficking felony received zero points. The reason Wilson received zero points for his 1992 drug-trafficking conviction was based on USSG 4A1.2, Application Note 3. Application Note 3 refers to related cases. Altogether, Wilson's criminal-history score subtotal based on listed convictions amounted to six points.

In the section of the Presentence Report computing final criminal-history points after the subtotal for listed convictions was determined, Wilson received one criminal-history point for his 1992 drug-trafficking sentence, based on USSG § 4A1.1(e) (2000). Section 4A1.1(e) requires the court to

[a]dd 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.

USSG § 4A1.1(e) (2000).

14

Wilson had received two points under USSG § 4A1.1(d) for committing the instant offense while on state parole. The applicable count of criminal history points under USSG § 4A1.1(e) was therefore one.

Adjustments to Wilson's criminal-history computation took into consideration his 1992 drug-trafficking conviction, even though the number of criminal-history points received for it directly was zero. But because his 1992 drug-trafficking conviction received criminal-history points under USSG § 4A1.1(e) (2000), instead of USSG § 4A1.1(a), (b), or (c) (2000), as required for the definition of prior felony conviction under USSG § 4B1.2(c)(2) (2000), Wilson was, in fact, incorrectly classified as a career offender at the time of sentencing. That is so because USSG § 4B1.2(c)(2) (2000) required the sentences "for at least two of the aforementioned felony convictions [to be] counted separately under the provisions of §4A1.1(a), (b), or (c)" in order for such convictions to count as "two prior felony convictions" for the purposes of the USSG § 4B1.1 (2000) definition of a "career offender." In his Presentence Report's list of criminal convictions, Wilson's 1992 drug-trafficking conviction was not counted separately from his related 1992 conviction for possession of criminal tools. It was therefore not counted separately for the purposes of "two prior felony convictions," failing the "career offender" definition of USSG § 4B1.1 (2000).

Wilson did not object to his designation as a career offender at sentencing. Rather, he explicitly accepted his designation as a career offender and waived his right to appeal the rulings of the district court.

Under 21 U.S.C. § 851(b),

[T]he court shall . . . before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that

any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).

But Wilson does not now challenge the very fact that he was convicted of a drug-trafficking offense in 1992. Rather, he challenges his incorrect classification as a career offender under the Sentencing Guidelines that applied at the time of his sentencing.

Furthermore, in the determination of the sentencing court, Wilson's "willingness to enter into a plea agreement . . . knowing that he could be characterized as a career offender" was the basis of his three-level reduction in offense level for acceptance of responsibility. That was "despite the defendant's own words," as the sentencing court determined that his actions in taking the risk of an enhanced sentence as a career offender by accepting the plea agreement "[spoke] more loudly than those words, and he should be entitled to the three-level reduction." The issue of accepting responsibility was raised by the written statement provided by Wilson during his presentence interview.

Wilson challenges the determination of his status as a career offender for the first time on appeal of his sentence under the First Step Act, eighteen years after sentencing. It is also the first time since sentencing that Wilson is represented by counsel. The district court dismissed the challenge as "patently untimely." But the sentencing court applied the Sentencing Guidelines incorrectly to conclude that Wilson qualified for career-offender status and, consequently, for an enhanced sentencing range under the Guidelines. "[T]he rule that an incorrect Guidelines calculation is procedural error ensures that [the Guidelines] remain the starting point for every sentencing calculation in the federal system." *Peugh v. United States*, 569 U.S. 530, 542 (2013).

Wilson asked the district court for a resentencing hearing under the First Step Act to consider all relevant statutory sentencing factors under 18 U.S.C. § 3553(a), and thus to ensure

16

that the imposed sentence was sufficient but not greater than necessary. The First Step Act does not provide for plenary resentencing. *See Alexander*, 951 F.3d at 708. In reviewing the sentence, "the district court is charged in the first instance with determining whether, taking all sentencing factors into consideration, including the correct Guidelines range, a sentence is 'sufficient, but not greater than necessary.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1910 (2018) (quoting 18 U.S.C. § 3553(a)). Although the district court must consider all § 3553(a) factors, it has discretion to place more weight on some of the factors when the facts of the case warrant it. *United States v. Ware*, 964 F.3d 482, 487 (6th Cir. 2020). And "[w]hile a district court need not explicitly . . . recite a list of [the § 3553(a)] factors, it must provide a reasoned explanation . . . sufficiently thorough to permit meaningful appellate review." *Ibid.* (quoting *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006)). "Though [a defendant] is not entitled to plenary resentencing, the First Step Act contemplates a baseline of process that must include an accurate amended guideline calculation and renewed consideration of the 18 U.S.C. § 3553(a) factors . . . ." *United States v. Boulding*, 960 F.3d 774, 784–85 (6th Cir. 2020).

The district court denied Wilson's motion for relief, addressing in a footnote as untimely the challenge to his characterization as a career offender. However, as the Supreme Court has pointed out in *Molina-Martinez*, "there will be instances when a district court's sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed. In that circumstance, because the defendant failed to object to the miscalculation, appellate review of the error is governed by Federal Rule of Criminal Procedure 52(b)." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342–43 (2016). Federal Rule of Criminal Procedure 52(b) addresses plain error: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Rule 52(b) juxtaposes such plain error with Rule 52(a) harmless

error: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). Wilson did not specifically challenge his incorrect classification as a career offender under the Guidelines as a procedural plain error under Federal Rule of Criminal Procedure 52(b) that would affect the reasonableness of his sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007). But he did request a sentencing hearing to consider all relevant statutory sentencing factors under 18 U.S.C. § 3553(a), which include

> the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . subject to any amendments made to such guidelines . . . and . . . that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced . . . .

18 U.S.C. § 3553(a)(4). During such a sentencing hearing as Wilson requests, he should be correctly classified for the purpose of determining his "applicable category of defendant" under the Sentencing Guidelines based on his criminal history. To do otherwise would be plain error.

When reviewing Wilson's sentence under the First Step Act and after *Booker*, the district court should not have perpetuated an incorrect application of the Sentencing Guidelines to Wilson's predicate offenses. "While 'complete review' [of a motion seeking relief under the First Step Act] does not authorize plenary resentencing, a resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional expectations." *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020). "To require that [the defendant] serve an enhanced sentence as a career offender, bearing the stigma of a 'repeat violent offender' and all its accompanying disadvantages, is a miscarriage of justice where he lacks the predicate felonies to justify such a characterization." *Hill v. Masters*, 836 F.3d 591, 600 (6th Cir. 2016).

Furthermore, as the Supreme Court concluded in *Pepper v. United States*, 562 U.S. 476 (2011), becausea district court's "original sentencing intent may be undermined by altering one portion of the calculus," when reversing one part of a defendant's sentence, an appellate court

18

"may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a).'" *Pepper*, 562 U.S. at 507 (quoting *United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005) and *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)) (alterations in the original).

Under the circumstances of this case, the district court below abused its discretion by simply dismissing in a footnote as untimely Wilson's challenge to his classification as a career offender that significantly affected his Sentencing Guidelines range. The district court committed plain error by accepting Wilson's incorrect classification as a career offender. We therefore reverse the district court's order denying Wilson's petition for relief, and remand for resentencing.

### 3. Rehabilitation Efforts

Finally, Wilson challenges as an abuse of discretion the district court's failure to mention Wilson's post-sentencing rehabilitation efforts. Under *Pepper*, "[d]istrict courts post-*Booker may* consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence *may*, in appropriate cases, support a downward variance from the advisory Guidelines range." *Pepper*, 562 U.S. at 504–05 (emphasis added); *see also Smithers*, 960 F.3d at 345; *Allen*, 956 F.3d at 358 (6th Cir. 2020) (First Step Act does not "prevent courts from considering post-sentencing conduct in assessing the § 3553(a) factors during a § 3582(c)(1)(B) sentence-modification proceeding."). The district court was not required to consider in Wilson's favor his GED diploma obtained during his eighteen years of incarceration or his job-skills training and other courses. Wilson alleges that, by not mentioning his post-rehabilitation efforts in a three-page-long Memorandum Opinion and Order, the district court abused its discretion. We disagree. But because we remand for resentencing on other grounds, we hold that the district court may—but is not required to—take into consideration Wilson's rehabilitation effort. *See Allen*, 956 F.3d at 358.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order denying Wilson's petition for relief, and **REMAND** for resentencing.